Breitel, J. (dissenting).
I dissent and vote to affirm, but for reasons not altogether the same as those expressed by Judge Scileppi.
Although revocation of parole is not the same as revocation of probation, they share, as pointed out by Chief Judge Fuld in his opinion for the majority, many things in common. It is for this reason one may believe, as a matter of policy, that there should be the right to counsel in parole revocation. At the same time every desirable policy, even if based on fairness, does not necessarily attain constitutional dimension warranting judicial mandate. In the case of the right to counsel it is a policy that requires the flexibility that only legislation may provide, namely, a code of procedure, preparation, implementation by facilities, personnel, and, above all, funds.
The gap-bridging reasoning which advances from probation revocation to parole revocation is, recognizably, the result of an erosive process which progressively treats each small distinction in a series as being of no account. Of course, as steps are taken in any novel direction it frequently becomes increasingly difficult to mark the instant gap before the next step, only *394 because another gap was bridged earlier. The process becomes endless and the logic is not that of rational compulsion but the dialectic piecemeal erosion of distinction.
Vagaries in constitutional adventures often have a deeper cause. They stem from the unperceived or dimly perceived assumption that all that is fair, good, or desirable must be constitutional and, the converse, that all that is unfair, evil, and undesirable must be unconstitutional. If this were true, however, then apart from budget-making, areas of private law, and the like, there would be little left for legislative action. All important public law questions affecting individuals would then become issues of constitutional dimension and the province of the courts. Because declared constitutional the judicial pronouncement becomes supreme.
The point of these comments, applied to the matter at hand, is that, although I am convinced that it is fair, good, and desirable that parolees have the right to counsel in parole revocation, this is a policy view which does not rise to a constitutional 'principle and it is not desirable for the courts to impose this policy view on an overburdened correctional and criminal justice system. The ultimate truth is that more than the resources of the law library are required to solve the root problems in bettering the correctional and parole systems. Conceived and developed as humane ameliorations of a harsh prison system, they have undoubtedly fallen behind humane and just standards currently held.
The majority opinion sensitively recognizes that the new procedure will threaten to dam the already sluggish movement in the criminal justice system. Hence, the a priori limitation on the role of counsel and the hearing at which he will represent his client. But like unloosed quicksilver, the procedure will hardly remain confined. Testimony, we are told, may be adduced but only ‘ ‘ that the board is accurately informed of the facts before it acts ’ ’. It is difficult to think of any other proof which is properly admissible before a full-fledged tribunal and which would not be admissible, therefore, before the parole board.
There are or will be other practical problems.
Are the hearings to be recorded? Where will they be held? Who is to assign counsel for indigent parolees? Who will examine witnesses for the board? Will the board act as prose *395 cutor of the delinquency charges and finder of the facts as well! Must the county prosecutor attend? Will hearsay be admissible? Must the determination rest on common-law evidence ? If the hearings are held at places of detention, who will pay for the cost of transporting counsel and witnesses? What will be the standard of proof for the board to revoke parole: reasonable ground, substantiality of evidence, preponderance of the evidence, some sort of equivalent of proof beyond a reasonable doubt?
And what if, in the view of counsel or the parolee, the board has applied the ‘ ‘ limitations ’ ’ on the hearing beyond the intention of the Constitution as now extrapolated? The Constitution, law, and “fundamental fairness” must allow judicial review of an alleged constitutional violation, and then there must be standards for reviewing the ' ‘ record ’ ’ made before the board, at least for gross unreasonableness of its action, if not on more probing standards. Moreover, where a new criminal offense is charged as the breach of parole, and a return to prison for many years may be entailed, it will be difficult, if fairness and equal protection of the laws are argued, to deny a reasonable doubt standard, or, in some future imagination, even a trial by jury.
The end is not yet. There must be postrevocation proceedings for constitutional violations, unbarrable by time limitations or laches. As in this very case, habeas corpus relief may not be denied, even after a long time lapse and without there ever hairing been a demand for counsel. Since the remedy created today affects, and it is justified only because it affects, the integrity of the fact-finding process, it should be applied retroactively, if ‘ ‘ fairness ’ ’ and ‘ ‘ fundamental constitutional rights ”, however newly discovered, are to be honored and a demeaning surrender to pragmatic considerations spurned. Moreover, as Judge Scileppi points out incisively, it is a thin line which separates parole release from parole revocation. This case shows that stare decisis will not suffice to maintain so thin a line very long. Lemmings, instinctively committed to their own self-destruction, could hardly be more assiduous.
None of this is to say that there is not a serious criminological problem. Parole revocation as it presently obtains does not satisfy modern standards. It is for this reason that the Presi *396 dent’s Crime Commission Corrections Task Force, voted without dissent that there should be a right to counsel in parole revocation hearings. (The President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections, pp. 86-88). But the recommendation was addressed to legislatures which could provide, limit, and change flexible procedures, as experience required, to establish a practical system and provide appropriate personnel to implement the system. A modest proposal in this direction was made in the Model Penal Code, drafted by the American Law Institute (A. L. I. Model Penal Code, Proposed Official Draft [1962], § 305.15).
As it is now, parole board members travel continually from prison to prison to handle calendars that overwhelm them and on which they allot minutes for personal appearances by prisoners seeking to be paroled.*
Probation revocation is a different matter. Courts revoke probation, not the parole board. Probation revocation is a function of the sentencing court in the courthouse in the county of venue.
To be sure a few States have provided the right to counsel on parole revocations. But none, with perhaps the exception of Pennsylvania, has the population, urbanization, and crime rate of this State, let alone the beleaguered system which currently attracts notoriety for purported denial of expedition in the handling of the individual caught in its mesh. The Federal system provides the right to counsel by administrative rule, the most flexible and controllable of methods.
*397 Indeed, for a system in crisis to take on the new burden by constitutional mandate, and therefore unchangeable by mere statute, will undoubtedly make modern experience with coram nobis and habeas corpus relief seem not to have been so heavy a burden at all. Moreover, in doing so, the explicit direction of the Legislature is, in effect, declared unconstitutional. The statute provides in pertinent part: ‘ ‘ Thereafter, the board shall at the first available opportunity permit the alleged violator to appear personally, but not through counsel or others, * * * and explain the alleged violation ” (Correction Law, § 218, now § 212, subd. 7).
Accordingly, agreeing that fairness would suggest a change in parole revocation procedure, but rejecting, emphatically, that an issue of constitutional dimension arises, exposed at long last by a bare majority of the court, which mandates the first of what will inevitably be a progression of judicial extensions, I dissent and vote to affirm the judgment dismissing the proceeding.
Judges Burke, Bergan and Gibson concur with Chief Judge Fuld; Judge Scileppi dissents and votes to affirm in an opinion in which Judge Breitel concurs in a separate opinion, and in both of which opinions Judge Jasen concurs.
Judgment reversed, without costs, and matter remitted to Supreme Court, Dutchess County, for further proceedings in accordance with the opinion herein.

 In 1969 the 12-man Board of Parole, required by statute to sit as panels of three members each, held 18,381 “hearings”, of which 3,213 were first hearings following parole violations (Correction Law, § 6, subd. 1; id., former § 218, now § 212, subd. 7; Fortieth Annual Report of the Division of Parole of the Executive Department [N. Y. Legis. Doc., 1970, No. 98], pp. 4-5,13, and Tables 1 and II). Of 4,274 parolees declared delinquent in that year, 969 had committed “ technical violations ” of the terms of parole (id., Tables 22 and VIII). The board in 1951 contained only five members but the number was progressively increased to its present size (Executive Law, § 241 prior to repeal by L. 1970, ch. 475; see L. 1960, ch. 351; L. 1962, ch. 549; L. 1963, ch. 207; L. 1967, ch. 324, § 2). The effect of the rule in this case on parole revocations arising from convictions for misdemeanors, particularly in New York City, is indeterminate.